May it please the Court, Jennifer Hackett for Carson Helicopters, the appellant in this case. Your Honors, this case comes before you because of a disputed term in a helicopter repair and service agreement between two companies. In that contract, the vast majority of that contract, Columbia agrees to service and repair Carson's helicopters, and Carson agrees to pay for those services. Among all of the other provisions in the contract, the very last provision is an indemnities provision. It's titled indemnities. In that paragraph, Carson agrees that the reasonable cost of repairs includes the cost that Columbia may have to incur to respond to liabilities. In other words, Columbia is building in an anticipated response to any liabilities it might incur for responding to liabilities arising out of this contract. Also in this provision, there is a recognition by Carson that there might be some liabilities that exceed what is reasonable, given what Carson is paying Columbia to service its helicopters. So the parties that entered into an indemnities provision, it's titled indemnities, in which Carson agrees to be responsible for the first $5 million out of a single claim, $10 million out of claims in the aggregate. In other words, Columbia is responsible for the first $5 million out of a single claim, $10 million out of claims in the aggregate. And Carson is responsible for anything above that. It's an attempt to reasonably allocate business risks. The last sentence of that provision states that this indemnity will survive the termination of the agreement. There's no dispute in this case, Your Honors, about when Carson has to indemnify Columbia. It is only after Columbia has been found liable for more than $5 or $10 million. After it has been found liable for the threshold amount. Kennedy. Say that again. There's no dispute about what? There's no dispute as to when Carson has to indemnify Columbia. The part that the district court both found and Columbia states in its brief that indemnity only arises after Columbia has been found liable for $5 or $10 million. Is there anything to indemnify against before that point in time? No, Your Honor. That's where indemnity is. I mean, there is no question. There's no possibility of indemnification before anything is owed. Right. Exactly. It's an unremarkable proposition. What follows it is not quite so unremarkable. Exactly, Your Honor. So the dispute here arises with the term defend in the indemnity of provision. There's one sentence in the contract. And the term hold harmless. Yes. Although, Your Honor, Columbia never actually argued that there's any dispute about hold harmless. Their idea was that. Defend is enough for Columbia's purposes, perhaps. But I don't see hold harmless as being all that different or all that consistent with the position that you've taken so far. Carson's position, Your Honor, is that given the sentence in the provision that Carson shall indemnify, defend, and hold harmless Columbia against claims made based on any act over $5 or $10 million, that all of those terms are used interchangeably and that it is an indemnity's provision. So that changes the meaning, the common understanding of both the word defend and the words hold harmless by saying they mean the same thing as indemnity. Can you give me any authority that says the words defend and the words hold harmless mean the same as indemnity? Your Honor, in an insurance context, that is absolutely right. In an insurance contract, in an insurance context where the entire proposition of the insurance contract is to defend and indemnify and there are definitions of the terms and there are definitions of the terms claims, I wholly agree with you. And if this were such a case, I would agree. In this case, what we have is three terms that are all modified by the same amounts that Carson is responsible once Columbia has been found liable. The claims made, Columbia does not dispute that claims made applies to the indemnification only attaches after they've been found liable. There is no distinction in the provision about. Indemnification can't attach until something is owed. That's why I said it was an unremarkable proposition. The problem is that defend and hold harmless can attach before there's a judgment against the individual party. And you're trying to tell us so we should read those out of the provision. I'm not sure how you can do that. Your Honor, we're actually not asking you to read them out of the provision. We're actually asking you to change the definition so they mean something that effectively takes them out of the provision. Except in this contract, Your Honor, there is no definition as to when the duty to defend arises. There are all sorts of practical implications. Well, have you ever heard of a context where the duty to defend arises after a judgment's been entered against the party? No. What's a duty to defend mean? Well, Your Honor, that's the issue in this case. Okay. That's the issue in this case. Have you ever heard of any context, you can take it outside of insurance, where defend means you've got to defend me after I've lost? If you're asking, I mean, in this case we have the issue. Simple question. Is there anything that says defend means after I've lost, that's when you have to defend me? No. Although there is. Isn't that what you're trying to advocate for here? By saying there's no duty to defend, all we've got to do is pay a judgment after a judgment's been entered, but we don't have to defend you. What we're advocating here is that this whole entire provision was meant to be an indemnities provision, not a duty to defense clause. Carson is not in the business of defending its vendors. How is that not reading defend out of the provision? It's reading it consistently with the rest of the provision. Here we have words, as in Hurd v. Burns, where the court used reserving or the parties used reserving and accepting in the same context. They're used interchangeably as if they mean the same thing. You started out by saying, well, I think something like this. You agree with Judge Clifton that, you know, defend and hold harmless means something different than indemnify in an insurance contract, but this is not an insurance contract. Tell me why that makes a difference, that this is not an insurance contract. Why should it be different than an insurance contract? It makes a difference because of the – because in an insurance contract, you can look at the overall – you can look at the language in the overall context of the contract itself, and there are definitions as to when you can defend and when you hold harmless and when you indemnify. Here, there is no such – there is no such definition of the term defend that is any different. Now, all Carson – Any different than what? Any different than indemnify or hold harmless. No, no, no. But don't you have to assume that when people use two terms like that, they mean something other than to repeat the same thing? I mean, they could say, you know, we promise to defend and, you know, to indemnify and indemnify and indemnify you. I mean, you don't repeat the same thing three times, right? I agree that in the – in common – in common terms, the words do. In contractual drafting, you don't do that, do you? Is that common? It's not common, Your Honor, but there is – in the Heard v. Brin's case, that's exactly what happened. Reserving and accepting were used interchangeably, and the court decided that they had to go beyond the scope of the agreement. Here, Your Honor, all Carson has to do is find that there is another plausible interpretation besides the one that Columbia – this Court does not have to agree with us that our interpretation is correct, that all three terms are used interchangeably, or that defend arises the second the claim is made. All that this – all that we have to do is convince the Court that our interpretation is plausible, that claims made cannot – cannot be, after the – after Columbia is found liable for the purposes of indemnity, but when a case is filed for over $5 million or $10 million for defend, given the plain language in the contract. There's nothing – there's nothing outside those – those terms that say that. In fact, Your Honor – Your Honors, the – the district court found the defend and hold harmless mean the same thing, in her opinion. Columbia argues that they all three mean different things. Carson cited a Ninth Circuit case where indemnify and hold harmless mean the same thing.  And so, in this case, we have to convince the Court that the defend and hold harmless and defend mean, and as in her, they were used indiscriminately. And we would argue, Your Honor, that this was really meant to be an indemnities provision, as evidenced by the last sentence in the provision, which says, this indemnity shall survive the term of this agreement. If that were the case, then the second that Columbia was sued for more than $5 or $10 million, Carson could say, we terminate the contract, we have no duty to defend you, and we'll see what happens on the other end. May I reserve, Your Honor? Roberts. Kennedy. Just a minute. Can I ask a question? Think about this, because I'm going to want you to address this when you come back. This – this case is here on a Rule 54b certification. Yes, Your Honor. It's not really discussed anywhere why a 54b certification is proper. You know, this is one of the, frankly, the few cases I've seen where I have some doubts whether it should have been certified, and what would happen if we said the certification were not proper, and it should go back to the trial court and wait until the end of the case.  Thank you, Your Honor. Good morning. I'm Stephen Dethridge. I'm here on behalf of Columbia Helicopters. And the first thing I'd like to point out is that in April 2009, the parties to this case entered into a stipulated resolution of issues in which they resolved the indemnity and hold harmless components of paragraph 8 of the service agreement, and in which they said the parties have not resolved the issues of the existence, scope, timing or triggering of Parson's defense obligation. And that was what was brought up with the district court, was the existence and the triggering of the defense obligation, not the scope of the defense obligation. So if I may. What's left – following up on the question Judge Tshima posed, what's left of this case in the district court? What's on ice subject to the 54B certification, and how does resolving this issue help resolve the rest of the case? If this case is – well, when this case is mandated back to the court, there is a breach of contract claim that is still live. And if Carson refuses to honor their defense obligation to Columbia, then the breach of contract claim would go forward. So in essence, you're here to figure out if you're going to win on the defense claim, and then you go back and apply that. Are there other issues? And I suspect there may be an issue as to the scope of defense and so forth, but are all the issues regarding the indemnification side now resolved? Yes. The stipulated resolution of issues took care of that. So if this – when this is mandated back to the district court, then the parties will have to hopefully work something out regarding the scope. There's some things regarding the scope that aren't legitimately in dispute, such as they've got to provide lawyers in order to defend Columbia, and, you know, there has to be competent counsel. But mostly what is left is the breach of contract claim. But the breach is what? It's the breach of the indemnification provision. No. It would be a breach of the duty to defend if Carson were to say we're not going to honor our duty to defend. In the underlying lawsuit, is it going forward in the meantime? No. There's – well, there's actually – this is a tangle of lawsuits. This arises from a helicopter crash in August 2008, and so there are a number of plaintiffs and a number of lawsuits that have been consolidated with Judge Mossman, and there's a parallel track going on. But this – again, if this is – once this is mandated back to the district court, all that will be left is a breach of contract claim and resolving the scope of the duty to defend. Who's defending those cases on your behalf now? The – actually, Morrison Forster is defending it. And when I say who, I mean somebody you retained or somebody they're paying for? It's somebody – it's actually Columbia Helicopters Insurance Company that is paying for that defense for now. Right. So if we look at the language of paragraph 10, there's some key concept – there's key words in there, indemnify, defend, and hold harmless. But also, claims made that arise out of – by any party or parties based on any act or omission, assuming those claims made exceed threshold amounts, either $5 million for a single claim or $10 million for claims in the aggregate. There's no dispute that there have been lawsuits filed against Columbia arising from that helicopter crash that exceed both of those monetary thresholds. So then the two points raised by Carson is that – Well, that in itself is an interesting question, you see, because that – I mean, that's sort of forward-looking. And all it can – all you can base that now on, that determination on now is on a claims made basis. I mean, those are the claims that are being made, right? Right. And the contract requires claims made – There's no judgments in those amounts yet. True. But there doesn't need to be, based on the plain language of the contract. No, no, no, no. But according to your opponent's point of view, if no obligation arises until after judgment, then you don't even know if it's going to be above $5 or $10, do you? That would be true on the indemnity, perhaps, but right – And that's all we're talking about, indemnity. No, we're talking about defend – we're talking about defend now, and Morse and Forster is – they're not free. So there's – cost being incurred right now from the moment the claim was made. It's a very thrifty-priced offer, I know that. So one of the concepts that is – was offered is that indemnify, defend, and hold harmless are the same thing. And their – Northwest Pump, which is a court of appeals case from Oregon, says the – they say, this is a quote, the duty to defend is different than the duty to indemnify. And then there's a Queen Villa's case, which is a California court of appeals case, in which they do a pretty good job of describing how indemnify is different than hold harmless. So these are three different concepts. And then the other – the other thing is that claims made is the words that were chosen, and, again, it's undisputed that the claims made exceed the monetary threshold amounts. So if we – if we can agree that the language is unambiguous, the question becomes, can – can we look at other things? Can we look at – excuse me – extrinsic evidence to determine if there's a latent ambiguity? And there is Oregon case law that supports the notion that the court can look to extrinsic evidence to determine if an ambiguity exists in an otherwise apparently unambiguous term, but the extrinsic evidence is limited to the circumstances under which the contract was made. And in the cases that have been cited, there's the Rodway case, there's the Milne case, and a couple of other cases. In each one of those, it's a temporal limitation on the type of extrinsic evidence that can be considered. It's time of formation or before the time of formation, not post-contract activities with other clients or post-contract activities with the client. Do you have any knowledge as to whether this kind of clause is common in the industry? I've never seen anything quite like it. I mean, a vendor, a service vendor, enters into a standard form contract prepared by the vendor that requires the purchaser of the services to provide insurance to the vendor for the quality of the vendor's work. That's kind of unusual. I go to buy a car, and GM says to me, here, you pay for the warranty. Is this a common provision within the industry? It wouldn't be. In the example you raise where you buy a car, that would be a probably an unenforceable rule. Okay, so I take my car in for servicing, and the gas station says, you know, with all these lawsuits I can't afford insurance, so you're going to have to provide insurance for the quality of my services. I've never been asked to sign something like that. I don't know. I mean, I'm a consumer, so I have some advantages that professionals don't. But I can't help but wonder if that has some effect on how you're supposed to interpret the provision, what people could reasonably expect it to mean. It strikes me as so odd in terms of putting the cost of insurance for the vendor's services on the purchaser, not simply hidden within the overhead or something, but no, you've got to take care of anything that I screw up on, that whether that might have some influence is how it's interpreted. So that's why I pose the question. Is this a standard clause in the industry? Is this one kind of taken off the shelf and specially tailored? I suspect that it is a standard clause, and here's why. In this circumstance, Columbia is providing a repair service for helicopters. And helicopters can be configured in a lot of different configurations. You could have a pilot and a copilot with a bunch of cargo. You could have or in this circumstance, you could have a pilot and a copilot plus 11 passengers. And so the – flying a high-risk operation, dumping retardant on a forest fire in northern California. So you've got the purchaser of the service to the helicopter going out there doing different things, and we can't control the risk that the helicopter is exposed to. So it's the purchaser of the service controlling the risk, which is why the risk for the defense risk and diminified risk are shifted to the helicopter.   the risk of the purchaser of the service. One of the arguments being made by Appellant is accepting these terms in an insurance contract, okay, but outside the context of insurance, where an insurer is – a non-insurer is reading the terms, what are they fairly to understand the obligation they're taking on? And in Queen Villas, there was an indemnification provision at issue there as well, and it was enforced in the – I believe it's the Rodway case, where the – where the – yeah, the seller of his business wanted to be absolved of all liabilities related to his business to – as he was selling it to the purchaser, and it was enforced in Rodway as well. So this is the kind of clause that is, you know, defense indemnity and hold harmless agreements are enforced, and there's two examples there that – in which they work. Thank you, Your Honor. Thank you. Ms. Battle. Your Honor, I believe my opponent addressed part of the issue of the Rule 54b issue. The issues in this case are whether or not Carson has a duty to defend that is separate from one to indemnify and hold harmless, and when that duty arises, if there is a separate duty. We moved for Rule 54b because the only – the rest of the case all deals with a breach of contract of this indemnities provision, and if – and indemnify and hold harmless, as my opponent said, have now been stipulated as to that they do not – neither indemnify nor hold harmless arise until Columbia has been held liable for $5 or $10 million. The only thing that's left, Your Honor, is duty to defend. And to that point, the very first – the very first question you asked me, or the very first point you made, Your Honor, is that defend and hold harmless are both at issue here, but that's not true. As my opponent said, the parties have agreed that both indemnify and hold harmless only arise after a liability has been found of $5 or $10 million. So Carson argues, Your Honor, that it is plausible to interpret from the context of this provision alone, because the Court did not go outside and look at extrinsic evidence, that all three of those terms are modified by the same threshold amount, that claims made, if it means that it only indemnifies or hold harmless after $5 or $10 million liability has been found, defend means the same thing. And indeed, my opponent just told you that they never asked – Columbia never asked Carson to defend in the very beginning of this case. Their complaint, which I believe is in the record, Your Honor, asks only for a declaratory judgment that the indemnities provision survives. There's no separate question about the duty to defend. So we would ask, Your Honor, that it is least plausible that summary judgment should be reversed because of the interchangeable meaning as to their timing. Thank you, Your Honor. Thank you. Patterson, please.
judges: Tashima, Paez, Clifton